# RADIO COMMUNICATIONS, INC. *v.* PUBLIC SERVICE COMMISSION OF MARYLAND ET AL.

[No. 326, September Term, 1981.]

*Decided January 7, 1982.*

The cause was argued before LISS, WILNER and WEANT, JJ.

*Thomas Waxter, Jr.,* with whom were *Nora Winay, Peter W. Collery* and *Semmes, Bowen & Semmes* on the brief, for appellant.

*James A. Pine,* with whom was *Daniel P. Gahagan* on the brief, for appellee Public Service Commission of Maryland. *Thomas S. Martin,* with whom were *John Henry Lewin, Jr.,* and *Venable, Baetjer & Howard* on the brief, for appellee Hawkins.

LISS, J., delivered the opinion of the Court.

In 1971 the General Assembly of Maryland adopted an act designated as Chapter 543 of the Laws of Maryland which amended the Public Service Commission (hereinafter PSC) law to bring within the PSC's jurisdiction all radio common carriers. Maryland Code (1957, 1980 Repl. Vol.) Art. 78, § 55A subsection (b) of the Act contains a "grandfather" clause which provides for the certification of all radio common carriers operating and licensed by the Federal Communications Commission (FCC) on July 1, 1971. Radio common carriers which provided mobile radio communication by either verbal radio contact or signal had previously been licensed only by the FCC. Upon qualification as a public service carrier, and upon application within ninety days of the effective date of the statute, all then operating carriers were authorized under the "grandfather" clause of the Act to continue their operation in the territory "professed to be served" on July 1, 1971. Distinguished from the position of the "grandfather" operators, any "proposed" radio common carrier which sought to operate in any of the "grandfather" territories or to extend its service into the established area of an existing certificated carrier was prohibited absent a

showing and determination that the existing service was "inadequate to meet the reasonable needs of the public." *See* Maryland Code, Art. 78, § 55A (d).

At the time of the enactment of § 55A there were six radio common carriers operating in Maryland, namely: Carl G. Smith d/b/a Smith Communications Service (SCS), predecessor in interest to one of the appellees herein, Hawkins Communications, Inc. (HCI); the appellant herein, Radio Communications, Inc. (RCI); American Radio-Telephone Services, Inc.; Contact, Inc.; Betty Bowen, d/b/a Salisbury Answering Service; and Modern Communications. All of the above named carriers duly filed applications for "grandfather" status pursuant to subsection (b) of the Act.

In its application filed on September 30, 1971, SCS stated that it was "engaged in the operation of a radio common carrier system in the City of Baltimore and the counties of Baltimore, Anne Arundel, Howard, Harford and Carroll." In an amended application filed beyond the statutory deadline of ninety days, SCS included a map indicating service to Baltimore City, the five original counties above mentioned, and four additional counties. RCI filed for a certificate in Baltimore City and twenty counties.

The PSC elected to conduct individual hearings on each of the six "grandfather" applications. In the course of the hearing on SCS's application, the PSC received testimony from several witnesses, including one John E. Dettra, Jr., a radio engineer. He stated that the "reliable service area" of a radio common carrier was the area in which service is expected to have not less than a 90% reliability as plotted by a contour line known as 37 dbu (decibel units). RCI, in opposition to the testimony of Dettra, took the position that the 37 dbu contour was too restrictive and not supported by the language of the statute. The Commission ultimately adopted the "reliable service area" test advanced by Mr. Dettra in awarding all six "grandfather" certificates of necessity and convenience. SCS was awarded a certificate to serve Baltimore City and portions of Baltimore County, Anne Arundel County and Howard County.

RCI took exception to the PSC's ruling and noted an appeal. The dispute between RCI and its four principal competitors was eventually resolved by the Court of Appeals in *Radio Communications, Inc. v. Public Service Commission of Maryland,* 271 Md. 82, 314 A.2d 118 (1974). In weighing the respective contentions of RCI and SCS as to the test to be applied in determining "grandfather" rights under the statute, the Court of Appeals concluded:

> We read subsection (b) to say that those who assert "grandfather" status cannot obtain certification by merely "professing to serve" a given area or county. Subsection (b) provides for certification of a radio common carrier *"engaged in the operation* of any radio common carrier system . . . ." By obtaining certification, a carrier is expected ". . . to *continue the operation* . . . in the territory professed to be served. . . ." (emphasis added). Thus, when the application of a subsection (b) radio common carrier professing to have served an area is challenged, that carrier must then prove that, in fact, it did serve that area, *i.e.,* that on July 1, 1971, it was "engaged in the operation" of a radio common carrier system in each subdivision for which certification is sought. [Emphasis in original.] 271 Md. at 95-96.

As the territory claimed by RCI was arguably greater than had been allowed by the PSC, the intermediate standard adopted by the Court of Appeals, the case was remanded to the Commission for further proceedings in order for the PSC to determine the area actually being served by RCI at the time of the adoption of the grandfather clause. The events following remand were detailed in this Court's opinion in *American Radio-Telephone Service, Inc. v. Public Service Commission of Maryland,* 33 Md. App. 423, 365 A.2d 314 (1976). Suffice it to say that this Court ultimately affirmed that RCI's *actual* service area consisted of an area bounded by RCI's interference contours, which included Baltimore City and all or portions of twenty of Maryland's counties.

Prior to the decisions in *American Radio, supra,* but subsequent to the original decision in *RCI v. PSC, supra,* SCS transferred substantially all of its assets, including its certificate of convenience and necessity, to HCI. Upon joint petition by SCS and HCI, the PSC, on July 9, 1975, approved and authorized the transfer.

On March 11, 1976, HCI, as successor in interest to SCS, filed a petition with the PSC requesting the Commission (pursuant to the authority granted it by Section 85 (d) of Article 78), to correct the error of law incorporated in its order in the original case, *i.e.,* the adoption of the erroneous standard for determining "grandfather rights" as determined by the Court of Appeals in *Radio Communications, Inc., supra.* HCI also requested the PSC to grant it a certificate of convenience and necessity for the continued operation of its radio common carrier system in the territory which Smith Communications professed to serve in its amended application filed on September 20, 1971.

Over the objection of RCI, the hearing examiner of the PSC ruled preliminarily that the prior testimony in the case established an actual service area as of 1971, bounded by Sherwood Forest on the south, Gaither on the west, Hampstead on the northwest and Bel Air on the northeast. The examiner also concluded that HCI succeeded to all of SCS's "grandfather rights" and was entitled to exercise "whatever rights SCS have asserted under its certificate of convenience and necessity."

Proof of the alleged actual service in 1971 was offered by way of prefiled written testimony of the witnesses who testified at the original hearing. In addition, HCI produced several witnesses, primarily employees and the accountant of Mr. Hoffberger, SCS's principal customer in 1971. The witnesses were permitted to testify that Hoffberger received service to the outer boundaries of his customer service area which included Street, New Windsor, Cooksville, Millersville and Arnold. Smith testified to radio carrier contact with businesses in Northeast, Georgetown, Kent Island, Deale and Annapolis. SCS logs of radio usage, which

were required to be maintained under FCC regulation, had been destroyed by Smith after the transfer to HCI. On the basis of this testimony, the examiner concluded that Smith's testimony with regard to additional areas was not corroborated and denied these territories to HCI.

The examiner issued a proposed order containing the following findings and rulings:

> (1) a transferee under a grandfather clause may exercise his predecessor's right to seek modification of a grandfather certificate; (2) § 85 (d) authorizes the Commission to modify its orders at any time; (3) HCI's delay in filing its petition was neither unreasonable nor barred by the doctrine of laches; (4) SCS was engaged in rendering public communication service as of July 1, 1971; (5) Smith's testimony did not sufficiently prove radio service to the additional areas claimed; and (6) the testimony of the other witnesses was sufficiently corroborated to prove service to the new area claimed. The examiner ordered that HCI be granted a certificate of convenience and necessity for the continued operation of a radio common carrier system in all of Baltimore City and portions of Anne Arundel, Baltimore, Carroll, Harford and Howard Counties as delineated by a contour connecting Street, Freeland, New Windsor, Cooksville, and Arnold. The area awarded coincided with the testimony of Sweeney, one of Hoffberger's employees, and extended well beyond the 1971 testimony of Smith.

We have included, for the purpose of clarification, Exhibit A which compares the 1972 award of territory, the actual service area testified to in 1971, and the 1979 award as modified by the additional testimony received into evidence by the examiner.

The proposed rulings by the examiner were appealed to the PSC which affirmed the examiner by appropriate order. Thereafter, both RCI and HCI appealed the Commission's

order to the Circuit Court for Anne Arundel County. HCI sought certification in the greater area delineated by Smith's additional testimony. The Circuit Court for Anne Arundel County affirmed the Commission's order in all respects. Both RCI and HCI appealed. HCI subsequently dismissed its appeal and was designated the appellee in this case. RCI, as appellant, appeals the order of the Circuit Court affirming the order of the PSC. It raises three issues to be decided by this appeal:

I. Does Article 78, § 85 (d) authorize the reopening of a validly issued certificate of convenience and necessity?

II. May a transferee of "grandfather" rights seek a modification of the certificate of convenience and necessity of its transferor?

III. Was SCS's certificate of convenience and necessity properly modifiable under the circumstances of this case?

I.

The basic question presented in this case is whether the PSC may, under the broad powers granted it by the Maryland Legislature, modify a legally erroneous decision, absent a timely appeal by a party or a request for a rehearing.

Section 85 (d) of Article 78 expressly vests the PSC with the power to modify its orders. It states:

All orders of the Commission shall take effect within such reasonable time as the Commission may prescribe, *and shall continue in force according to their terms, or until vacated, suspended, modified, or superseded by further order of the Commission* or by a court of competent jurisdiction. [Emphasis added].

As the Circuit Court noted in its memorandum and order "[u]nder Article 78, Section 85 (d) the Commission is

empowered to modify any order, and no time limit is imposed upon which this modification may occur."

It is clear to us that after this case had filtered its way through the lengthy and involved appellate process which culminated in *American Radio-Telephone Service, Inc., supra,* the Commission had before it the dual responsibility of correcting its error of law in its original order and determining the territory actually served when the "grandfather" clause became effective under the statute.

Appellant contends that the Commission erred when it permitted the introduction of additional testimony by the appellee to substantiate the actual area of service by SCS beyond that of Mr. Smith and his witnesses in 1971. It suggests that Article 78, § 86 is controlling. That section provides, in pertinent part, as follows:

> (a) *Application and action thereon.* — Any party in interest may apply to the Commission for rehearing within 30 days after service upon it of a final order. Action on such application shall lie in the discretion of the Commission. If a rehearing is granted, the case shall be decided within 30 days after the case on rehearing is finally submitted.

> \* \* \*

> (c) *What facts may be considered; new order.* — The Commission may consider on rehearing facts not presented in the original hearing, including facts arising after the date of the original hearing, and may by new order abrogate, change, or modify its original order.

The method for reopening a cause after final submission is set forth in Code of Maryland Regulations, Vol. XIX, 20.07.02.08.

Appellant contends that HCI was granted a rehearing rather than a modification of the original order and that no new evidence was required to correct the error alleged in the Commission's original finding, and more importantly, that

the statute and implementing regulations expressly prohibit the Commission from hearing such new evidence beyond the 30 day limit established by Article 78, § 86.

Appellee responds that the statute makes it clear that the Commission has the power to rehear any final order at any time on its own motion. Md. Code, Art. 78, § 86 (d). The Commission urges that the 30 day stricture imposed by the regulations is at the most directed at the parties involved in any proceeding before the Commission and it has the discretion to reopen any hearing and to permit such additional evidence as it finds to be appropriate. The Commission further argues that in allowing HCI to present additional evidence of actual service during the 1978 hearings, it merely extended to HCI the same opportunity it afforded the appellant upon remand by the Court of Appeals. *Radio Communications, Inc. v. Public Service Commission, supra. See American Radio-Telephone Service, Inc., supra.* The Court of Appeals recognized the appropriateness of permitting additional evidence in RCI when it stated:

> *Although RCI did endeavor to furnish the proof required by (b) [of § 55A], the Commission was preoccupied with the premise that the subsection (d) standard controlled.* We think the case should be remanded to the Commission for further proceedings, *including the introduction of such additional evidence as the Commission may require*, in order that RCI may be afforded the opportunity of establishing in what areas it did actually provide service, and for which it seeks certification under subsection (b); and so that intervenors may have the opportunity to present contrary evidence. [Emphasis added]. 271 Md. at 96.

We conclude that there is an affirmative duty upon an administrative agency to correct a prior decision when, because of an error of law, a continued adherence to its erroneous decision would place a litigant at an unfair

disadvantage. We said in *Board of County Commissioners of Cecil County v. Racine,* 24 Md. App. 435, 332 A.2d 306 (1975):

> We conclude that where, as in the subject case, a condition is created whereby property similarly situated but owned by others, could be used for purposes that would be denied a prior litigant, the principle of *res judicata* should not apply to an erroneous determination of law by an administrative body. Any other course would approach, if it did not reach, a deprivation of constitutional dimension. In any event, unrelaxed application of the doctrine would constitute a manifest unfairness to Racine.
>
> We are guided to our conclusion by the language used in a very recent decision of the Court of Appeals of Maryland, *Criminal Injuries Compensation Board v. Joseph D. Gould,* 273 Md. 486, 331 A.2d 55 (1975), wherein it was said at 521 [76]:
>
>> "Mistaken interpretation[s] of law, however honestly arrived at, are held not to be within the exercise of sound administrative discretion and the legislative prerogative, but to be arbitrary and illegal."
>
> Perpetuation of illegality by an administrative body by inflexible application of the principle of *res judicata* is impermissible. [24 Md. App. at 452].

The Commission has the primary duty to supervise and regulate public service companies "to assure their operation in the interest of the public." Md. Code, Art. 78, § 56.

## II.

Appellant suggests that even if modification is available under § 85 (d) that the remedy here sought is impermissible

under the principles delineating the scope of grandfather rights. "Grandfather rights" are considered exceptions to statutes and must be strictly and narrowly construed. *McCauley v. Makah Indian Tribe*, 128 F.2d 867 (9th Cir. 1942). While we have no quarrel with the substantive law as stated in these cases, we conclude that *Germenko v. Public Service Commission*, 226 Md. 295, 173 A.2d 362 (1961) is dispositive of the right of SCI to transfer its grandfather rights to HCI. In *Germenko*, the Court of Appeals quoted with approval from *Railroad Commission of Texas v. Rau*, 45 S.W.2d 413 (Texas 1931):

> [T]he right to a permit was a valuable right exclusive in the holder and subject to sale or transfer by him, *even to one having no apparent connection with him,* and that therefore the transferee could exercise his predecessor's right under the "grandfather clause" to obtain the permit. [Emphasis added]. 226 Md. at 308.

Nor are we impressed with appellant's argument that "to conclude that HCI acquired a grandfather right permitting modification of a previously determined actual service area would be to say that it acquired more in the transfer — than the transferor itself acquired." We conclude that the Commission, prior to 1979, had never previously determined SCS's actual service area. The Court of Appeals recognized in *RCI, supra,* that the record of the 1971 proceeding was incomplete because of the Commission's preoccupation with the erroneous "reliable service area." It solved that problem on remand by referring the matter back to the Commission and specifically approved the Commission's taking such additional testimony as the Commission might find necessary to establish RCI's actual service area. We find no abuse of discretion by the Commission in affording HCI the identical opportunity to introduce such additional testimony as the Commission found appropriate in determining SCS's actual service area.

## III.

Appellant finally contends that since SCS failed to appeal or seek a rehearing of the original order of the PSC in 1972 that SCS's successor in interest, HCI, may not share the benefit of RCI's successful appeal which established the "actual service area" as the area to which "grandfather" rights applied. *See Harrison v. Robinette,* 167 Md. 73, 173 A. 60 (1934).

We do not, however, find that this legal principle is necessarily dispositive of this appeal. We conclude that the Commission's power to modify a legally erroneous decision to correct an injustice is grounded in the provisions of article 78 and the decisions of the courts. The power to modify is a *sine qua non* which permits the Commission to effectuate the legislative intent in the regulation of public utilities. Art. 78, §§ 1 and 56. Nor does the principle of *res judicata* necessarily restrict the latitude which is allowed to administrative tribunals in the determination of matters of law. Professor Davis, in discussing the applicability of *res judicata* to administrative bodies, said, in 2 Davis (1958), Administrative Law Treatise § 18.03 at 566:

> The desire for repose on which res judicata rests relates primarily to findings of fact; repose on lively problems of law may even be affirmatively objectionable. A tribunal ought not to be barred from using trial-and-error methods of feeling its way into an undeveloped frontier of law and policy. Even when the principle of res judicata should be rigidly applied to findings of fact, some relaxation of its application to rulings of law may be indicated. Many factors may argue against conclusive effect of an administrative decision of a question of law — the function may be somewhat nonjudicial, law and policy may be in a state of flux, substantive reasons may require that the agency's authority to protect the public interest should remain unfettered, the administrative procedure may not have been geared to a careful consideration of the question of

law, the agency may have been poorly staffed for deciding the question, or the legislative intent may have been that the agency's decisions of law should not be binding.

We find nothing in the record which required the Commission or the Circuit Court to find that HCI was equitably estopped from seeking modification of the Commission's erroneous original finding. Following the Court of Appeals' remand to the Commission of RCI's application, the Commission permitted RCI to introduce additional evidence of actual service. The Commission's decision following remand was issued on May 21, 1975 and affirmed by the Circuit Court and this Court on December 10, 1975, and November 3, 1976, respectively. The validity of the Commission's interpretation of the standard for "grandfather" certification as enunciated by the Court of Appeals in *RCI* was still in litigation when HCI filed its petition for modification on March 11, 1976. In addition, as the trial judge noted, "the Commission was not considering modifications until the Commission's interpretation of the actual use standard was tested in court." Under these circumstances we find nothing in the conduct of SCS or HCI which would render the modification of an admittedly erroneous legal decision inequitable or unjust.

We have considered the record in this case in light of the standards enunciated in § 97 of Art. 78. That section provides:

Every final decision, order, rule or regulation of the Commission shall be prima facie correct and shall be affirmed unless clearly shown to be (1) in violation of constitutional provisions, or (2) not within the statutory authority or jurisdiction of the Commission, or (3) made upon unlawful procedure, or (4) arbitrary or capricious, or (5) affected by other error of law, or (6) if the subject of review is an order entered in a contested case after hearing, such order is unsupported by substantial evidence on the record considered as a whole.

The Court of Appeals has held that an order of the Commission is prima facie correct and the burden is on those who seek to set it aside on appeal to show by clear and satisfactory evidence that there is illegality or unreasonableness. *Baltimore Gas and Electric Co. v. McQuaid,* 220 Md. 373, 152 A.2d 825 (1959). We conclude that the Commission, consistent with its treatment of RCI's application on remand, appropriately exercised its discretion in permitting HCI to offer additional testimony in determining the actual service area of SCS and that there was substantial evidence sufficient to sustain the correctness of the Commission's order granting a certificate of convenience and necessity to HCI, successor to SCS, for the continued operation of a radio common carrier system in the following areas: all of Baltimore City, and a portion of Anne Arundel, Baltimore, Carroll, Harford and Howard Counties, as delineated by a contour connecting Street in Harford County, Freeland in Baltimore County, New Windsor in Carroll County, Cooksville in Howard County and Arnold in Anne Arundel County, being the area designated as No. 2 on the map included in this opinion. We further find no error in the action of the trial judge in affirming the action of the Public Service Commission.

*Order affirmed; costs to be paid by appellant.*

EXHIBIT A

1. Order dated 2/9/72 DBU Contour

2. Smith Testimony, 1971

3. Amended order adopted PSC,1979

EXHIBIT A