761 So.2d 89 (2000)
Joann P. CHIASSON and the Times-Picayune Publishing Corporation
v.
NEW ORLEANS PUBLISHING GROUP, INC., N.O.P.G., L.L.C. and Harry Lee, in his capacity as Sheriff of the Parish of Jefferson, State of Louisiana, New Orleans Publishing Group, Inc. and NOPG, L.L.C.
No. 99-CA-1338.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, W. Christopher Beary, Breazeale, Sachse & Wilson, L.L.P., New Orleans, for Appellants Joann P. Chiasson and the Times-Picayune Publishing Corporation.
Gary J. Elkins, Richard L. Traina, Elkins, P.L.C. (Appeal Counsel), New Orleans, William W. Hall, William W. Hall & Associates, Metairie, for Appellees New Orleans Publishing Group, Inc. and NOPG, L.L.C.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Plaintiffs, JoAnn Chiasson, and the Times-Picayune Publishing Corporation (T-P), appeal the granting of a Motion for Summary Judgment filed by defendants, New Orleans Publishing Group, Inc., and New Orleans Publishing Group, L.L.C. (NOPG), as owner and publisher of New Orleans CityBusiness (CityBusiness), and the denial of a Motion for Summary Judgment filed by plaintiffs, in a dispute over *90 the rights to publish legal advertising and notices in Jefferson Parish. We affirm.
Prior to June 1, 1986, CityBusiness, published the legal notices and advertisements as the official journal of Jefferson Parish. After 1986, another publication owned by NOPG, the Jefferson Parish Times & Democrat (JP Times), replaced CityBusiness as the official journal. The JP Times continued to publish the official notices and advertisements until 1992. In July of 1992, NOPG and the T-P confected an Asset Purchase Agreement and a Bill of Sale transferring the JP Times and other assets to the T-P. Thereafter, the T-P published the notices and advertisements of Jefferson Parish. In June of 1996, Harry Lee, the Sheriff of Jefferson Parish (Sheriff Harry Lee), who is charged with the duty to select the official journal of the Parish of Jefferson, awarded the contract to CityBusiness.
As a result of losing the Jefferson Parish contract, on August 6, 1996, the T-P filed three separate lawsuits against NOPG, one in Orleans Parish and two in Jefferson Parish. One of the Jefferson Parish suits was voluntarily dismissed. The remaining Jefferson Parish suit and the suit in Orleans continued.[1]
The petition in Jefferson Parish requests a permanent injunction and declaratory judgment against NOPG, CityBusiness, and Sheriff Harry Lee. The petition demands that the trial court order Sheriff Harry Lee to comply with the requirements for selecting the publication of legal advertising and notices set out in R.S. 43:201, et seq. and to declare that CityBusiness is not qualified as a newspaper under the statute. Co-plaintiff, JoAnn Chiasson, alleges that she is a citizen of Jefferson Parish and that she is injured by the allocation of the contract to CityBusiness, because it does not qualify under the statute and thus, she cannot rely on the notices and/or advertisements.
In September of 1996, Sheriff Harry Lee filed an answer and reconventional demand, alleging that the T-P conspired to monopolize the market for the publication of legal notices and that its objective is to obtain a 10% increase in payment. He asked for damages and injunctive relief.[2]
In September of 1997, defendants filed for a summary judgment, alleging that CityBusiness was qualified to publish the legal notices and advertisements under R.S. 43:201 C, the "grandfather" provision. Defendants also asserted that the Asset Purchase Agreement did not transfer any publication rights owned by CityBusiness. Plaintiffs also filed for a summary judgment in November of 1997, asserting that the transfer of NOPG's rights and assets included the right of CityBusiness to publish the legal notices and advertisements.
A hearing was held on both motions. Following the hearing, on December 4, 1997, the trial judge ruled on both motions. He granted defendants' motion and denied plaintiffs'. Plaintiffs filed an appeal, which was dismissed in September of 1998 because the judgment was an interlocutory partial judgment and had not been certified as appealable, as required by La. C.C.P. art. 1915. In January of 1999, a Motion to Certify was filed, which was granted after a hearing in June of 1999. Although the reconventional demand by Sheriff Harry Lee had not yet been tried, the trial judge determined that there was no justifiable reason for delay because the summary judgment disposed of all the issues between Chiasson, the T-P, and *91 NOPG. After our second review of this record, we agree that there is no justifiable reason to delay this appeal.
Plaintiffs assert that the trial judge erred in granting the summary judgment in favor of defendants because, in 1992, the T-P purchased NOPG's CityBusiness' rights to publish the legal notices, which were granted to it by the "grandfather" clause in La. R.S. 43:201(C). Plaintiffs further allege that the trial judge erred in holding that NOPG could not sell to the T-P the rights of CityBusiness under La. R.S. 43:201 C.[3]

SUMMARY JUDGMENT
La. C.C.P. art. 966 provides that a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Under the 1997 amendment to the article, the summary judgment is favored, but the burden of proof remains with the movant. Hussain v. Enterprise Leasing Co., Inc., 98-806 (La.App. 5th Cir.3/10/99), 735 So.2d 46, 47.

LA. R.S. 43:200 ET SEQ
La. R.S. 43:201 is applicable to parishes outside of the Parish of Orleans. This provision requires the sheriff, or other officer charged with the duty, to select the newspaper for the notices and advertisements in June of each year. For a publication to qualify, it must be an English language "newspaper", as defined in R.S. 43:200; it must have been published in an office physically located in the parish for the previous five consecutive years; it cannot have missed more than three consecutive issues (unless caused by certain acts of God); it must have had a paid circulation in the parish for the previous five consecutive years; and it must be entered in the U.S. Post Office under a periodical permit for five consecutive years. See: R.S. 43:201 B. A "grandfather clause", or exception, was included in R.S. 43:201 C for those contracts in existence on or before May 11, 1970, and for publications in parishes with a population of not less than four hundred thousand, when the publication actually published official proceedings within one year prior to June 1, 1986.

CONTRACT INTERPRETATION
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. However, a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. "When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed ..." parol evidence is admissible to clarify the ambiguity and show the intention of the parties. Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087, 1089 (La.1981); J. Caldarera & Co. v. Louisiana Stadium and Exposition Dist., 98-294 (La.App. 5th Cir.12/16/98), 725 So.2d 549, 551; Security Center Protection Services, *92 Inc. v. Lafayette Sec. & Electronic Systems, Inc., 95-CA-693 (La.App. 5th Cir.1/17/96), 668 So.2d 1156, 1159-1160.
The Asset Transfer Agreement provides the following:
WHEREAS, NOPG now possesses certain rights to publish legal advertising and owns and publishes The Jefferson Parish Times & Democrat (the "T & D") and has owned and published its predecessor titles and publications, including without limitation, The Kenner City News (such rights and the operation and publication of the T & D and its predecessors being referred to herein as the "Business");

WHEREAS, the Business includes the publication of legal advertising and notices pursuant to La. R.S. 43:140-43:211 or such other statutes or ordinances as may authorize or prescribe the placement of advertisements in publications as a requirement of law (the "Legal Advertising Business");
WHEREAS, the Legal Advertising Business includes the publication with respect to Jefferson Parish, Louisiana, of certain legal advertising and notices (a) evidenced by resolutions or by written or oral contracts with local governmental or other entities (the arrangements for such publishing being referred to as the "Contracts") and (b) pursuant to La. R.S. 43:201 "Judicial Advertising and Legal Notices" ("Section 201");
WHEREAS, NOPG desires to sell the Business, including all of its assets, except as specifically limited herein;
WHEREAS, T-P desires to purchase the Business on the terms and conditions set forth below;
NOW, THEREFORE, the parties agree as follows:
Section 1. Sale; Purchase Price.
1.1 Sale of Assets. Upon the Closing (as defined in Section 6), NOPG shall sell, assign or otherwise transfer and deliver to T-P, on the terms and conditions set forth herein, all of NOPG's rights to engage in the publication of legal advertising and all of NOPG's right, title and interest in and to the assets, properties and rights of the Business (except as specifically excluded by Section 1.2 below) (the "Assets"), including but not limited to:
(a) the Contracts and any other rights to publish legal advertising;
(b) trademarks and tradenames (the "Tradenames");
(c) list of subscribers to the T & D (the "Subscribers List") and their paid subscriber relationships;
(d) mailing permits;
(e) vending machines;
(f) books and records;
(g) mailing lists;
(h) computer software and data;
(i) the back issues of the publications of the business, including the copyrights; and
(j) the goodwill of the Business ... (emphasis added).
Section 5 of the agreement contains a non-competition provision[4], which states: *93 Section 5. Non-competition agreement. Each of William M. Metcalf, Lynn Metcalf and NOPG (each on behalf of himself, herself or itself and each of such entity's affiliates) agrees that during the two years immediately succeeding the Closing [of the Asset Purchase Agreement] (or such lesser time as [the] T-P or any person deriving title to the goodwill of the Business through it shall carry on a like business), each of them shall refrain from carrying on or being engaged in (or from being involved, directly or indirectly, as an officer, director or employee of, a consultant or lender to, or an investor in, any entity which shall carry on or engage in) a business similar to the Legal Advertising Business and from soliciting customers of the Legal Advertising Business within the Parishes of Jefferson or Orleans. (emphasis added).
The stated purpose of the Asset Transfer Agreement is to sell "the Business." "Business" is described as "such rights and the operation and publication of the T & D [Jefferson Parish Times & Democrat] and its predecessors ...." The first part of the paragraph explains that statement: "WHEREAS, NOPG now possesses certain rights ... and owns and publishes the Jefferson Parish Times & Democrat ... and has owned and published its predecessor titles and publications, including without limitation, The Kenner City News ..." The second paragraph states that the "Business" includes the "Legal Advertising Business." The "Legal Advertising Business" "includes the publication... of certain legal advertising and notices (a) evidenced by resolutions or by written or oral contracts ..."
At the time the agreement was executed, the legal notices and advertisements had been published by the JP Times since 1986. CityBusiness had no contracts for legal advertising. The JP Times and its predecessor titles were specifically transferred to the T-P in the agreement. It is undisputed that the entity, CityBusiness, was not transferred. It is also undisputed that CityBusiness could not qualify as a newspaper, within the meaning of the statute, without the "grandfather clause".
The parties disagree as to whether that "grandfather clause" gave CityBusiness a transferable "right", or whether it gave the publication the "capacity" to assert the right, which could not be transferred independent of the entity, CityBusiness. Defendants argue that the agreement only transferred the JP Times, its predecessors and its then existing contract rights. Plaintiffs contend that the Asset Purchase Agreement transferred all publishing rights owned by NOPG at the time, including CityBusiness' "right" to publish, granted to it by R.S. 43:201 C.
The definitions of "capacity" and "right" in the Black's Law Dictionary indicate that the terms can be used interchangeably, but also have separate and distinct meanings. Black's Law Dictionary contains an extensive definition of the word "right", showing different usages. See: Black's Law Dictionary 1323-25 (6th ed.1990).[5]
*94 "Capacity" is defined in Black's Law Dictionary at 207 as:
Legal qualification (i.e. legal age), competency, power or fitness. Mental ability to understand the nature and effects of one's acts. Capacity to sue. The legal ability of a particular individual or entity to sue in. or to be brought into, the courts of a forum ...Criminal capacity. Accountability for committing crime; e.g., child under 7 years of age lacks criminal capacity ... See also Competency; Disability; Earning capacity; Fiduciary capacity; Incapacity; Legal age; Legal capacity to sue; Mental capacity or competence; Standing to sue doctrine; Substantial capacity test; Testamentary (Testamentary capacity).
An entity or person can have a "right", such as to handle one's affairs, but not be able to do so, because he or she lacks the "capacity" to pursue those rights due to some reason, such as age or infirmity. Thus, as a general rule, an individual or an entity could not transfer its capacity, when capacity is personal to the individual or entity. Likewise, some rights are not transferable, such as the right to practice law.
The definition of "rights" and "capacity" does not resolve our issue. However, because the agreement refers to "certain rights," uses the word "includes," and fails to specify CityBusiness anywhere in the agreement, we find that the contract is ambiguous, relative to the alleged transfer of any rights or capacity of CityBusiness. Thus, we must ascertain the intent of the parties by reviewing the entire agreement, keeping the circumstances surrounding the execution of the agreement in mind.
Included in the agreement is a non-competition provision. At the time of the agreement, only the T-P, the JP Times and CityBusiness were qualified to bid for the Jefferson Parish legal notices business. There were no other qualified competitors, nor could there have been any within the two years that the non-compete provision was effective, since no other publication could have met the five-year requirements of R.S. 43:201 A.[6] Since the T-P specifically *95 purchased the JP Times in the Asset Purchase Agreement, the non-competition provision had to have been inserted to prevent CityBusiness from competing. T-P's interpretation of the agreement, that CityBusiness' right to pursue the legal advertising and notices contract was transferred in the agreement, would make the non-competition provision meaningless. It is presumed that parties to a contract do not include meaningless words.
We also note that, without the "right" to bid for the Jefferson Parish legal advertising business, CityBusiness would never be able to compete against the T-P. That would effectively extend the non-competition agreement indefinitely, which would violate La. R.S. 23:921 and public policy. A non-competition agreement that extends beyond two years is null and unenforceable. Millet v. Crump, 96-639 (La.App. 5th Cir.12/30/96), 687 So.2d 132, 134.
Therefore, after reviewing the Asset Purchase Agreement, giving it appropriate contractual interpretation, and considering the facts surrounding the confection of the agreement, we find that the parties did not intend to transfer any "rights" relating to CityBusiness. We further find that the trial judge did not err in granting the Motion for Summary Judgment filed by defendants and in denying the Motion for Summary Judgment filed by plaintiffs.
Accordingly, the judgment granting the Motion for Summary Judgment in favor of defendants and denying the Motion for Summary Judgment filed by plaintiffs is hereby affirmed.
Costs of this appeal are to be paid by plaintiffs.
AFFIRMED.
NOTES
[1] The petition in the Orleans Parish lawsuit asserts breach of the Asset Purchase agreement, tortious conversion, unfair competition, and illegal trade practices. The petition asked for damages, specific performance and/or injunctive relief. Neither the Orleans nor the Jefferson Parish suit was stayed pending a decision by either court.
[2] The case was removed to federal district court in September of 1996. The case was remanded back to the state district court in December of 1996.
[3] The suit in Orleans Parish was tried in December of 1999 and a judgment was rendered in favor of plaintiffs in February of 2000. Plaintiffs argue that a prior interlocutory writ denial by the La. Fourth Circuit Court of Appeal and the La. Supreme Court is binding on the issue of whether CityBusiness could transfer its rights under the "grandfather clause" separate from CityBusiness. However, we are not bound by those decisions as they are neither law of this case, nor res judicata.
[4] La. R.S. 23:921 prohibits the restraint of business, except as follows:

A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void ...
* * *
B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale ...
[5] Black's Law Dictionary 1323-25 (6th ed.1990) defines "right" in part:

As a noun, and taken in an abstract sense, means justice, ethical correctness, or consonance with the rules of law or the principles of morals...As a noun, and taken in a concrete sense, a power, privilege, faculty, or demand, inherent in one person and incident upon another. Rights are defined generally as "powers of free action." And the primal rights pertaining to men are enjoyed by human beings purely as such, being grounded in personality, and existing antecedently to their recognition by positive law....a juristic content, "a capacity residing in one man of controlling, with the assent and assistance of the state, the actions of others."
As an adjective, ... morally correct, consonant with ethical principles or rules of positive law. It is the opposite of wrong, unjust, illegal.
A power, privilege, or immunity guaranteed under a constitution, statutes or decisional laws, or claimed as a result of long usage....
In a narrower signification, an interest or title in an object of property; a just and legal claim to hold, use, or enjoy it, or to convey or donate it....
A legally enforceable claim....
That which one person ought to have or receive from another....
General Classification
Rights may be described as perfect or imperfect, according as their action or scope is clear, settled, and determinate, or is vague and unfixed.
Rights are also either in personal or in rem.....
Rights may also be described as either primary or secondary....
With respect to the ownership of external objects of property, rights may be classed as absolute and qualified....
Rights are also either legal or equitable....
Constitutional Rights
There is also a classification of rights, with respect to the constitution of civil society....
Rights... classified in constitutional law as natural, civil, and political...sometimes "personal rights."
Natural rights are those which grow out of the nature of man ... as distinguished from... created by law...; or... those which are plainly assured by natural law; or ..., the rights of life, liberty, privacy, and good reputation.
Civil rights are such as belong to every citizen of the state or country, or, in a wider sense, to all its inhabitants, and are not connected with the organization or administration of government. They include the rights of property, marriage, equal protection of the laws, freedom of contract, trial by jury, etc. Or, as otherwise defined, civil rights are rights appertaining to a person by virtue of his citizenship in a state or community..
Political rights consist in the power to participate, directly or indirectly, in the establishment or administration of government, such as the right of citizenship, that of suffrage, the right to hold public office, and the right of petition.
Personal rights is a term of rather vague import, but generally it may be said to mean the right of personal security, comprising those of life, limb, body, health, reputation, and the right of personal (sic) liberty.
[6] In order to qualify to publish legal notices and advertisements, R.S. 43:201 A states that, for the five consecutive years prior to the selection of the publication, the newspaper had to have been both located in the parish and published in the parish. Newspaper is defined in R.S. 43:200, in part, as a publication that is published no less than weekly, that was originated and published for the dissemination of current news of a varied, broad, and general public interest, and that had maintained a general paid circulation to bona fide paying subscribers within the area. Publications created primarily for advertising would not qualify, nor would one that was created for special interests. There were no publications in existence that met these requirements in July of 1992.