902 So.2d 512 (2005)
The MEADOWCREST CENTER
v.
TENET HEALTH SYSTEM HOSPITALS, INC. (Formerly Known as NME Hospitals, Inc.)
No. 05-CA-12.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*513 Wanda L. Theriot, Byron Ann Cook, Brian T. Leftwich, New Orleans, Louisiana, for Plaintiff/Appellant.
Daniel A. Ranson, David D. Kervin, Jr., Gretna, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by The Meadowcrest Center, plaintiff-appellant, from a summary judgment dismissing its suit to terminate a negative predial servitude in favor of Tenet Health System Hospitals, Inc., defendant-appellee. For the following reasons we affirm that judgment.
The undisputed facts are as follows. Some years ago Tenet (then operating as NME Hospitals, Inc.) acquired a tract of land on Belle Chasse Highway in Jefferson Parish and built a hospital. In 1984 it sold some of the unused portion of the tract to Meadowcrest Center. The act of sale contained a clause which prohibited Meadowcrest or its successors or assigns from using the property as "an outpatient surgical center or a diagnostic center or any similar facility" without the written permission of Tenet or its successors or assigns. Meadowcrest built a multi-tenant office building on the site.
In 1988, Meadowcrest leased a part of the office building to Advanced Diagnostic/MRI Limited Partnership for operation of a MRI clinic. During negotiations for this lease Advanced Diagnostic realized that it required access via Tenet's remaining property at the rear of the premises for ambulances and other patient needs. By written agreement Tenet consented to this use. Three years later Tenet bought all of the assets of Advanced Diagnostic, including its lease. Then, in 1994, Tenet and Meadowcrest entered into an amended written lease for the same premises replacing Advanced Diagnostic with Tenet as the tenant.
Besides the sale of land to Meadowcrest, Tenet (also then known as NME Hospitals) sold two other parts of the tract. *514 One sale in 1993 was to the Belle Chasse Clinic and contained no restrictions as to use. A second sale in 1986 was to George J. Ackel. Although this sale contained a restricted use clause, its language was not the same as that used in the sale to Meadowcrest.
In 2004, Meadowcrest filed the present suit for declaratory relief to have the servitude set aside and advanced four arguments. First, it asserted that the pertinent clause in the act of sale was actually a building restriction imposed on the entire tract originally purchased by Tenet in pursuance of a general plan of development as per La. Civ.Code. Art. 775. It argued that Tenet had either abandoned the plan or that enforcement of the restriction was prescribed by two years since the occurrence of obvious violations. Second, it contended that even were the restrictions construed as a negative servitude as per La. Civ.Code Art. 706 that servitude was lost by the ten year prescription. Third, it argued that La. R.S. 23:921, dealing with non-competition agreements, should be applied to void the restrictions because of the unequal bargaining power between Tenet and Meadowcrest. Finally, it contended that because of the restrictions the property has been effectively taken out of commerce in violation of public policy.
Tenet urged a motion for summary judgment in its favor, and the trial judge granted this motion. Meadowcrest now appeals urging the same four grounds for relief advanced in the trial court. It also asserts here that there are facts in dispute which should have precluded the granting of a summary judgment.
Summary judgments shall be granted when the papers before the court show that there is no dispute as to material facts, and that the movant is entitled to judgment as a matter of law. La.Code Civ. Pro. Art. 966. Although the burden of proof on the motion is with the movant, if the opposing party will bear the burden of proof at trial it is sufficient for the movant to point out that there is a lack of factual support for one or more essential elements of the opponents claim. If the opponent fails to come forward with such factual support, then summary judgment is appropriate. Id.
The first issue here concerns the nature of the restrictive clause in the act of sale. Meadowcrest claims that it is a building restriction imposed by Tenet on the entire tract as provided in La. Civ. Code Art. 775. That article requires that there be "a general plan governing building standards, specified uses, and improvements." Tenet placed in the record three sales of portions of the tract. The first to Meadowcrest contained the restriction at issue here. The second to Belle Chasse Clinic contained no restrictions, and the third to George Ackel contained restrictions similar to but clearly distinct from those in the Meadowcrest act. Meadowcrest produced no other sales or evidence of a general plan of development. It is clear from the sales that there was no "general plan" governing development of the tract, and the trial judge correctly so noted.
It is equally clear the restrictive clause establishes a negative predial servitude under La. Civ.Code Art. 706. That article describes such servitudes as imposing on the owner of the servient estate a duty to abstain from doing something on his estate, such as "prohibitions of building and of the use of an estate as a commercial or industrial establishment." Here the prohibition is use of Meadowcrest's property as an outpatient surgical center, a diagnostic clinic, or other similar uses. This is precisely the kind of restriction contemplated in the codal article. As such this servitude is subject to the prescription *515 of ten years, and in the case of negative servitudes this period commences from the date of an occurrence of an event contrary to the servitude. La. Civ.Code Arts. 753-754.
Meadowcrest argues that this prescription has indeed run, commencing in 1988 when it leased space to Advanced Diagnostic for a use not permitted by the servitude. However, the servitude only prohibits diagnostic uses without the permission of Tenet. The lease from Meadowcrest to Advanced Diagnostic was approved by Tenet (NME) in Paragraph XV of the document which states that NME "takes cognizance of the above and foregoing Agreement, consents to and approves the same...." Because Tenet (NME) consented to use by Advanced Diagnostic there was no violation of the servitude and thus prescription did not commence. Moreover, in 1992 NME acquired the assets of Advanced Diagnostic, including its lease with Meadowcrest. In 1994 the lease was amended to name NME as the lessee under basically the same terms and conditions. Because there had been no commencement of prescription under the original lease, there could be no such commencement once NME acquired the lease and then amended it in its name. Additionally, by NME continuing the business of Advanced Diagnostic it necessarily consented to that use of the premises.
Meadowcrest next argues that the servitude should be declared void because it violates La. R.S. 23:921, the statute dealing with non-competition clauses in employer-employee contracts. Its reasoning is that the servitude is in the nature of a non-competition clause because Tenet intended to prevent it from leasing space to medical facilities which would compete with services provided by Tenet's hospital. While that characterization of the purpose of the servitude may be accurate, it nonetheless does not come under the provisions of the above statute. In Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 96-1716, 96-1727 (La.7/1/97), 696 So.2d 1373, the court held that La. R.S. 23:921 was not intended to apply to non-competition agreements between two independent corporations on equal footing, but rather to such agreements between employers and employees. In the present case Meadowcrest, a partnership, and Tenet (NME), a corporation, entered into an arms length agreement for the sale of real estate. There is no allegation Meadowcrest was ever employed by Tenet, that Tenet exerted any pressure on Meadowcrest, or that it had any leverage over Meadowcrest because of other business dealings. The fact of the matter is that Tenet offered a property for sale with a negative servitude, and Meadowcrest agreed to purchase it with that restriction. The mere fact that Tenet is a national corporation and Meadowcrest is a local partnership does not establish unequal bargaining power between an employer and employee such as to implicate the provisions of La. R.S. 23:921.
The final argument advanced by Meadowcrest is that the servitude removes their property from commerce in violation of the public policy of the state. This argument fails for two reasons. First, the property was not effectively removed from commerce because Tenet agreed to permit its use. Second, were this argument to be adopted we would have to hold that La. Civ.Code Art. 705, a statement of public policy, is nonetheless against public policy. This we refuse to do.
For the foregoing reasons we affirm the judgment of the district court.
AFFIRMED.