696 So.2d 1373 (1997)
LOUISIANA SMOKED PRODUCTS, INC.
v.
SAVOIE'S SAUSAGE AND FOOD PRODUCTS, INC.
Nos. 96-C-1716, 96-C-1727.
Supreme Court of Louisiana.
July 1, 1997.
*1374 Alex L. Andrus, III, John Patrick Doggett, Albin Alexandre Provosty, Andrus, Doherty, Provosty, Salder & deLauney, Opelousas, for Savoi's Sausage and Food Products, Inc.
George Davidson Fagan, Leake & Anderson, New Orleans, for Louisiana Smoked Products, Inc.
JOHNSON, Justice.[*]
We granted writ of certiorari to determine whether a non-competition clause in a contractual *1375 agreement between Louisiana Smoked Products, Inc. and Savoie's Sausage and Food Products, Inc. is null and void under La.R.S. 23:921(A), which nullifies contracts or agreements which contain restraints on the exercise of a lawful profession or business. A jury found La.R.S. 23:921 applicable to the case at bar, and rendered judgment in favor of defendant, Savoie's Sausage and Food Products, Inc. Finding La.R.S. 23:921 inapplicable to the facts of the present case, the court of appeal reversed the trial court's ruling.

FACTS AND PROCEDURAL HISTORY
Savoie Sausage and Food Products, Inc. ("Savoie"), manufactures and distributes Cajun food products. On March 26, 1988, Louisiana Smoked Products, Inc. ("L.S.P.") and Savoie entered into a three-year term contract whereby L.S.P. agreed to market various meat products manufactured by Savoie. After the contract expired, the parties signed a second three-year term contract on June 12, 1991. In the 1991 contract, the parties agreed that Savoie would manufacture smoked alligator sausage and smoked venison sausage. In turn, L.S.P. agreed to purchase and process exclusively from or through Savoie. L.S.P. supplied Savoie with the raw venison and alligator meat, and Savoie then processed and packaged the sausage products. Although Savoie was in the business of processing sausage, roux, hogshead cheese and other products, it had never previously commercially sold or processed smoked alligator sausage and smoked venison sausage.
Savoie prepared the 1991 contract, using the 1988 contract as a guide. Savoie's attorney reviewed and approved the contract. The 1991 contract contained an anti-competition clause, which was also embodied in the 1988 contract. The noncompetition clause prohibited the parties from engaging in activity which directly competed with the other party's business activity for a period of three years after the termination of the agreement. The noncompetition clause, contained in paragraph 3(a) of the 1988 and 1991 contracts, stated the following:
3.(a)This Agreement shall remain in effect until terminated by the parties as set forth herein. Written notice of termination shall be served by one party on the other party, at its business address, sixty (60) days prior to the effective date of the termination. Each party agrees and obligates itself not to engage in activity which directly competes with the other party's business activity for a period of three (3) years after the termination of this Agreement. [Emphasis added].

The 1991 contract remained in effect until May, 1993, when the parties mutually terminated the agreement.
During the effective dates of the 1991 contract, Savoie manufactured for L.S.P. alligator and venison sausage, two commercially successful products. After termination of the contract, Savoie continued to manufacture and sell smoked alligator sausage and smoked venison sausage under its own label, using the recipe for the L.S.P. product. L.S.P. continued to market its own brands of those same products, now being manufactured for L.S.P. by Double D Meat, Inc., in Bogalusa, Louisiana. Undercut in pricing, L.S.P. became insolvent and had to abandon business approximately eighteen (18) months after termination of the 1991 contract. L.S.P. claims that Savoie violated paragraph 3(a) of the contract between the parties in that Savoie engaged in activities which directly competed with the other party's (L.S.P.) business activities within a three-year period following termination of the contract between the parties. According to L.S.P., Savoie "stole" its customers and undercut its prices. L.S.P. filed suit, seeking damages for breach of contract, unfair trade practices, negligent misrepresentation, detrimental reliance and intentional interference with L.S.P.'s contractual relations with a third party. Savoie denied all allegations and filed a reconventional demand. In its reconventional demand, Savoie sought $3,545.42, which it claimed was due on open account. Savoie also sought interest and attorney's fees in connection with the reconventional demand.
Several times before and during the trial, plaintiff attempted to have the trial judge *1376 rule that La.R.S. 23:921 is inapplicable to the instant case. The trial judge refused L.S.P.'s requests and noted its intention to submit the question of the statute's applicability to the jury. The charges the trial judge gave to the jury indicate that this was done.
The jury found in favor of Savoie on all of L.S.P.'s demands. The trial court also granted Savoie's reconventional demand, which had not been submitted to the jury. Subsequently, the trial judge denied plaintiff's motion for Judgment Notwithstanding the Verdict and Alternatively for New Trial. Based upon the admission by James Reynolds, the de facto owner of L.S.P., the trial judge also granted defendant's reconventional demand, which had not been submitted to the jury. Additionally, the trial judge granted L.S.P.'s motion to proceed in forma pauperis on appeal and its motion for a devolutive appeal. Because the trial judge submitted to the jury the question of the applicability of La.R.S. 23:921, the court of appeal conducted a de novo review of the case, to determine whether the trial court had committed a reversible error of law. The court of appeal determined that the trial judge failed to properly instruct the jury on the law applicable to the case, and that therefore, it was impossible for the jury to apply the correct law to the facts of the case. After a de novo review of the case, the court of appeal held that La.R.S. 23:921(A) is inapplicable to the instant case. Concluding that the non-competition clause between the two businesses was valid, the court of appeal found that Savoie had breached the contract. Consequently, the court of appeal reversed the trial court's finding, and awarded damages in favor of L.S.P., in the amount of $53,772.53, plus interest and costs. Savoie filed this writ application, raising the following assignments of error:
1. The court of appeal erred in enforcing the provisions of an anti-competition clause and in awarding damages for the breach of the anti-competition clause.
2. Alternatively, should this court enforce the provisions of the anti-competition clause, then the court of appeal erred in the calculation of damages based on projected sales from November 1, 1994 to May 5, 1996 because the actual sales during that period were much less.
Savoie's reconventional demand forms no part of this appeal.
In a companion writ application filed in this matter (96-C-1727), L.S.P. alleges that the court of appeal erred in failing to base its liability findings and award of damages in its favor on the additional causes of action raised: breach of contract, detrimental reliance, intentional interference with contract, negligent misrepresentations, negligence, unfair trade practices and abuse of rights. L.S.P. also alleges that the court of appeal's award of damages is insufficient based on the facts and evidence in this case. L.S.P. claims that the court of appeal erred in using the sum of $1.11 per pound as the "gross profit" made by L.S.P. on Savoie's sales of smoked alligator sausage. L.S.P. argues that the correct figure is $1.16 per pound.

BACKGROUND
In 1934, the Louisiana Legislature enacted the state's first noncompetition statute. Act No. 133, 1934 La. Acts 484 (now La.R.S. 23:921). Act 133 declared null and unenforceable any provision in which an employee agreed not to compete with his employer following the termination of his employment. Jeff D. Morgan, Comment, If At First You Don't Succeed: Louisiana's Latest Statutory Enactment Governing Agreements Not to Compete, 66 Tul.L.Rev. 551 (1991). A basis for the enactment of Act 133 was public policy forbidding the exclusion of individuals from the fields of work for which they were perhaps best suited. Id.
The courts consistently interpreted La. R.S. 23:921 as providing a broad policy against all agreements not to compete that were made ancillary to an employment contract. Id. Even before the 1934 statutory prohibition, the Louisiana courts had consistently held such agreements to be unenforceable. Cloverland Dairy Products Co. v. Grace, 180 La. 694, 157 So. 393 (La.1934). Prior to 1934, no legislative enactment governed agreements not to compete in Louisiana; the matter was left entirely to the judiciary. Morgan, supra note 6, at 553. In *1377 effect, the legislative enactment was an endorsement of the judiciary's prior treatment of noncompetition agreements. Morgan, supra at 554. Moreover, even though this statute refers only to an employer/employee, it has been judicially extended to various relationships which are "essentially" employer/employee. Winston v. Bourgeois, Bennett, Thokey and Hickey, 432 So.2d 936, 938 (La.App. 4th Cir.1983).
In 1962, the legislature enacted Act 104, which amended Act 133 to create two limited exceptions under which an employer and an employee could establish an agreement not to compete: (1) if the employer could show that he had incurred "an expense in the training of the employee" or (2) that he had incurred "an expense in the advertisement of the business." Morgan, supra notes 16-18, at 555. Under these exceptions, a noncompetition clause would be valid, provided that the restriction did not exceed a two-year time period, and did not extend beyond the geographical area in which the employer conducted business. Morgan, supra note 19, at 555. Employers had little difficulty showing that they had incurred some expense in training their employers or in advertising their businesses. Morgan, supra at 556. Consequently, the courts experienced difficulty in determining the extent to which the exceptions had modified the basic public policy underlying La.R.S. 23:921 when they attempted to interpret the exceptions. Id.
Some courts concluded that the statute required only normal expenses, such as those incurred in providing supervisory assistance during the training of the employee or in making nominal expenditures to advertise the employee's association with the business. Id. See also, Aetna Finance Co. v. Adams, 170 So.2d 740, 744 (La.App. 1st Cir.1964), writ denied, 247 La. 489, 172 So.2d 294 (1965). Contrarily, other courts interpreted the amended statute to require "substantial expenses" in training or advertising. Morgan, supra note 25, at 556.
In Orkin Exterminating Co. v. Foti, 302 So.2d 593 (La.1974), this court resolved the conflict among the courts by adopting a restrictive interpretation of the statute, holding that an employer must incur "substantial expenses" in the training or in advertising the employee's connection with a business in order to enforce a noncompetition agreement with the employee. Morgan, supra note 28, at 557. Following the Foti decision, no court found the requisite "substantial expenditures" test to be satisfied sufficiently to uphold a noncompetition agreement between an employer and an employee. Morgan, supra at 558. As a practical matter, the Foti decision rendered the exceptions to the 1962 amendment meaningless. See Id.
In an effort to remedy the flaws emanating from the courts' restrictive interpretation of the 1962 amendment, and to restore the legislature's original intent to the statute, the legislature completely redrafted the noncompetition statute in 1989. Morgan, supra note 44, at 559. The new statute, which is the subject of the instant case, consists of a general prohibition of all noncompetition agreements, subject to four specific exceptions under which noncompetition agreements are enforceable. See Id. at 559-560.

LAW AND ANALYSIS
Prior to the 1989 amendment, La.R.S. 23:921 provided:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years." [Emphasis added].

*1378 In the instant case, the noncompetition clause contained in the 1988 contract is unquestionably enforceable. Because the prohibition of noncompetition clauses prior to the 1989 amendment was clearly limited to employment situations, such clauses outside the employment context were permissible. L.S.P. and Savoie were two businesses on equal footingneither was an employer or employee of the other. Also, the parties executed the 1988 contract prior to the effective date of the 1989 amendment to La.R.S. 23:921. Therefore, application of La.R.S. 23:921, as it is confined to the employment context, governs the 1988 contract. Thus, the noncompetition clause contained in the 1988 contract was enforceable.
Pursuant to the noncompetition clause of the 1988 contract, L.S.P. and Savoie agreed and obligated themselves not to engage in activity which directly or indirectly competed with the other party's business activity for a period of three years after termination of the contract. The parties signed the contract on March 26, 1988. The three-year term for the 1988 contract terminated on March 26, 1991, at which time most of the parties' obligations under the contract were also terminated; however, there remained one outstanding obligationthe obligation of each party not to compete with the other party's business activities for three years following March 26, 1991. This outstanding obligation would have been effective until March 26, 1994. However, two and one-half months into the effectiveness of the noncompetition clause, the parties signed the second contract on June 12, 1991. Obligations of parties to a contract are fixed at the time the contract is entered into. See Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983). Consequently, the obligation under the noncompetition clause in the 1988 contract was superseded by the 1991 contract. Therefore, the 1991 contract extinguished any obligations under the 1988 contract.
At the time the parties executed the 1991 contract, La.R.S. 23:921 as it read pursuant to the 1989 amendment was applicable. The statute provided in pertinent part:
"Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." [Emphasis added].

The exceptions to this provision are specific and enumerated in Sections (B) through (F) of the statute. The exceptions include an employer/employee relationship, a partnership/partner relationship, a corporation/shareholder relationship, or a franchise/franchisee relationship. See La.R.S. 23:921(B) through (E). In each of these situations, the statute provides for limited circumstances under which a noncompetition clause may be valid. Id. Further, in Section (F), the statute provides for an exception pertaining to computer programming. See La.R.S. 23:921(F). As none of the exceptions apply to a business relationship between two corporations, which is the nature of the relationship between the parties in the instant case, the court must determine whether the legislature intended to prohibit noncompetition clauses executed by two businesses with its enactment of the 1989 amendment to La. R.S. 23:921.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.C.C. art. 9. When the language of a law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examination of the context in which they occur and the text of the law as a whole. Hutchinson v. Patel, 637 So.2d 415 (La.1994). See also, La.C.C. arts. 10 and 12. Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337, 340 (La.1980).
*1379 In the instant case, the language of the La.R.S. 23:921(A) is susceptible to different meanings. Generally, Title 23 of the Revised Statutes governs employment situations and relationships. The fact that this statute falls under Title 23 could reasonably give rise to the presumption that, unless otherwise indicated, the prohibition of every contract which contains a noncompetition agreement means every employment contract or every contract that is, to some extent, essentially of an employment nature. Legislation is a solemn expression of legislative will. Our interpretation of a law is primarily the search for the legislature's intent. Id. at 420. Because the statute is susceptible to different meanings, the court will examine the context in which the 1989 amendment occurred and the text of the law as a whole to determine whether the legislature intended La.R.S. 23:921 to be broadly construed to apply to relationships other than essentially employer-employee relationships which do not fall within the statute's delineated exceptions. Specifically, the court must determine whether the prohibition of noncompetition agreements applies to contracts executed by two corporations on equal footing.
The 1989 amendment's drafters explained in legislative committee hearings that the amendment was needed to rectify the courts' flawed interpretation of La.R.S. 23:921 and to restore the legislature's original intent to the statute. Morgan, supra note 44, at 559. La.R.S. 23:921 was enacted amidst the trials of the Great Depression in 1934. Morgan, supra notes 12 and 13, at 559. The legislature's original intent for the enactment of La.R.S. 23:921 was to establish a public policy which would forbid the exclusion of individuals from the fields of work for which they were perhaps best suited at a time when the nation's economy was floundering and could not accommodate the vast numbers of workers in the work force. Morgan, supra note 13, at 554. Consequently, La.R.S. 23:921, as it was drafted in 1934, declared null and unenforceable any provision in which an employee agreed not to compete with his employer following the termination of his employment. Id. Louisiana has consistently had a strong public policy against any employment contract which prohibits an employee from competing with a former employer. Neeb-Kearney and Co., Inc. v. Rellstab, 593 So.2d 741 (La.App. 4th Cir. 1992), citing Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974) and Matter of Standard Coffee Service Company, 499 So.2d 1314 (La.App. 4th Cir.1986), writ denied, 501 So.2d 232 (La.1987). Moreover, the public policy of Louisiana, both prior to 1934 and later, as expressed in La.R.S. 23:921, has always been to prohibit (or severely restrict) noncompetition agreements between employers and employees. Sentilles v. Kwik-Kopy Corporation, 652 So.2d 79 (La.App. 4th Cir.1995), rehearing denied.
Because the original intent of La.R.S. 23:921 was to prohibit noncompetition agreements between employers and employees, and because the purpose for the 1989 amendment to the statute, as expressed by its drafters, was to rectify the courts' flawed interpretation of La.R.S. 23:921 (in their attempt to differentiate normal and substantial expenses), and to restore the legislature's original intent to the statute, we hold that La.R.S. 23:921 is inapplicable under the facts of the instant case. As stated earlier, noncompetition agreements executed between employers and employees are valid under the exceptions to La.R.S. 23:921 under limited circumstances.[1] It is inconceivable that the legislature would uphold noncompetition agreements, subject to certain restrictions, executed between an employer and employee when its original intent and longstanding public policy was to forbid such agreements in employment situations, yet, forbid the execution of such agreements executed between *1380 two corporations altogether, allowing for no exceptions under any circumstances. In light of this consideration, we conclude that Title 23 was not drafted to encompass noncompetition agreements by two independent corporations on equal footing.
In Winston v. Bourgeois, Bennett, Thokey and Hickey, 432 So.2d at 936, plaintiff, Robert D. Winston, was invited to become a partner in defendant public accounting firm, Bourgeois, Bennett, Thokey and Hickey. Winston read and signed the partnership articles. Article II of the partnership articles provided that any partner who withdrew from the firm was indebted to the firm for fifty percent of one year's fees earned from all of the firm's clients at the time of withdrawal, for whom the withdrawing partner rendered services. Article II was generally effective for a period of eighteen months after withdrawal. A few years later, Winston resigned from the partnership and sued defendant for sums allegedly due from his capital account, in addition to sums representing his share of the partnership's profits. Defendant reconvened, claiming that Winston owed the firm sums he received from the firm's former clients, whom he serviced within 18 months of his leaving. The courts addressed the issue of whether Article II of the partnership agreement fell within the purview of La.R.S. 23:921.
Concluding that the form of the contract, as well as the label tacked to the individual, is immaterial, the court of appeal stated that the pertinent inquiry includes the following: (1) whether all concerned are bound equally to the covenant; (2) whether the terms are fair to each party in all respects; (3) the amount of control over the individual; (4) whether the person is subject to the wishes of a controlling majority; (5) the circumstances under which the contract was executed; and (6) the effect on the individual's right to engage freely in his occupation after the association terminates. Id. at 940. Affirming the trial court's ruling, the Fourth Circuit Court of Appeal found that La.R.S. 23:921 was inapplicable to the partnership agreement. The court of appeal reasoned that all parties to the partnership agreement were C.P.A.'sbusiness professionals, when Winston was invited to become partner. The court of appeal further reasoned that Winston was under no pressure to accept, and that he voluntarily opted to become partner in order to secure the benefits offered by the firm. Although Winston was written prior to the 1989 amendment, its theory regarding the determination of what falls within the purview of La.R.S. 23:921 is correct as applied to the statute both prior to, as well as subsequent to, the amendment.
Analogous to the facts in Winston, L.S.P. and Savoie are two corporations on an equal footing. The noncompetition clause executed between L.S.P. and Savoie was fair to each party in all respects: there was no disparity in the corporations' bargaining power, both parties were equally bound to the noncompetition clause, neither party had control over the other, and the prohibition of directly competing with each other's business activity was reasonably limited in duration to three years after termination of the agreement. See generally, Freechou v. Thomas W. Hooley, Inc., 383 So.2d at 340. See also, McCray v. Blackburn, 236 So.2d 859 (La. App. 3rd Cir.) writ denied 256 La. 845, 239 So.2d 355 (1970). Additionally, both L.S.P. and Savoie benefited from the contract. The 1991 contract was prepared, reviewed and approved by Savoie's attorney. At the time both parties signed the agreement, each consented to the noncompetition clause and were equally bound to the terms therein. After reaping the benefits of other provisions in the contract, Savoie now challenges the validity of the noncompetition clause, evidently, in an effort to avoid fulfilling its end of the bargain. This court is not inclined to invalidate the noncompetition clause under these circumstances. Prohibiting the parties from executing a noncompetition clause in their contract under these circumstances would unduly infringe on the parties' freedom to contract and the corresponding obligations to perform or abstain from some performance.
Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. "Freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. Blake D. Morant, *1381 Contracts Limiting Liability: A Paradox with Tacit Solutions, 69 Tul.L.Rev. 715 (1995). In a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. The state may legitimately restrict the parties' right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy. Morant, supra note 13, at 718.
For reasons stated hereinabove, neither the facts, nor the nature of L.S.P. and Savoie's relationship, support a finding that the noncompetition clause contained in the contract executed between the parties has a deleterious effect on the public or that it violates public policy. The original intent of La.R.S. 23:921 was to protect employees and prevent them from contracting away their right to future employment. Although initially the purpose of the statute was to protect employees, coverage was judicially extended to other classes of people who have uneven bargaining power. See Winston v. Bourgeois, Bennett, Thokey and Hickey, 432 So.2d at 938. Interpreting the statute in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it,[2] we find that La.R.S. 23:921 is not intended to protect independent corporations of on an equal footing from a bad bargain. Accordingly, the state may not legitimately restrict L.S.P. and Savoie's freedom to contract. We note however, that our finding that La.R.S. 23:921 is inapplicable to the agreement executed between L.S.P. and Savoie is narrow and limited to the facts and circumstances of this case.
Finally, the court rejects L.S.P.'s argument that the court of appeal used the wrong figure when assessing its damages. As the court of appeal noted, James Reynolds, L.S.P.'s president and owner, testified that he made a profit of $1.11 per pound for alligator meat. Receipts filed into evidence support the finding that L.S.P. paid an average of this amount per pound. Moreover, the court rejects L.S.P.'s additional causes of action. Accordingly, the court affirms the court of appeal's award of damages in favor of L.S.P., in the amount of $53,772.53, plus interest from the date of judicial demand until paid.

DECREE
For the reasons stated herein, the court affirms the court of appeal's decision insofar as it reverses the trial court's ruling and awards damages in favor of Louisiana Smoked Products, and against Savoie's Sausage and Food Products, Inc., in the amount of $53,772.53.
AFFIRMED.
VICTORY and LEMMON, JJ., dissent and assign reasons.
LEMMON, Judge, dissenting.
While the reasoning of the majority opinion is persuasive, La.Rev.Stat. 23:921A in unambiguous language nullifies every contract by which anyone is restrained from exercising a lawful trade or business. My conclusion that the Legislature intended to include every contract, and not just employment contracts, in this prohibition is fortified by Subsections 921B-921E, which provide specific and limited exceptions to the general prohibition.[1] Because the contract in the present case does not fall within any of the exclusive exceptions, the contract is null and void. Moreover, although this legislation is contrary to the generally prevailing public policy favoring freedom of contract, it is the legislative prerogative to set public policy in specific areas.
*1382 VICTORY, Judge, dissenting.
The majority's opinion holds that despite the clear language of La.R.S. 23:921(A), which provides that "Every contract or agreement ... except as provided in this Section, shall be null and void," the statute only prohibits contracts not to compete between employers and employees or similar types of relationships. Specifically, the majority states:
Generally, Title 23 of the Revised Statutes governs employment situations and relationships. The fact that this statute falls under Title 23 could reasonably give rise to the presumption that, unless otherwise indicated, the prohibition of every contract which contains a non-competition agreement means every employment contract or every contract that is, to some extent, essentially of an employment nature.
Opinion at 6. However, the majority's opinion fails to reconcile the existence of the exceptions to La.R.S. 23:921(A) in sections (B), (D), (E) and (F).[1] Had the legislature intended to prohibit only contracts in the employment context, as the majority states, there would be no reason for the legislature to specifically carve out exceptions to the general rule in La.R.S. 23:921(A). The inclusion of these exceptions strongly indicates that the legislature intended La.R.S. 23:921(A) to apply to every contract, as it clearly and unambiguously states, and not simply every employment contract. Therefore, I respectfully dissent.
NOTES
[*] Knoll, J. not on panel. Supreme Court Rule IV, Part 2, § 3. Recused.
[1] La.R.S. 23:921(C) provides in pertinent part:

"Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." [Emphasis added].
[2] See, Freechou v. Thomas W. Hooley, Inc., 383 So.2d at 340
[1] Subsection 921C contains the limited form of non-compete agreements allowed in contracts between an employer and an employee, similar to the provision contained in Section 921 before the 1989 amendment. The next most common type of contract in which provisions for non-competition have been used is a contract between the buyer and the seller of the good will of a business. Such provisions are now permitted under limited circumstances, but were formerly controlled by court determinations of the reasonableness of the particular provision.
[1] For example, if La.R.S. 23:921(A) was only meant to prevent non-competition agreements between employers and employees, there would have been no need to provide an exception for "Any person, including a corporation ... who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold..." La.R.S. 23:921(B). This exception would not be necessary if this type of contract was not prohibited by the legislature in La.R.S. 23:921(A). Similarly, there would be no need to "allow" the parties to a franchise to agree that "the franchisor shall refrain from selling, distributing, or granting additional franchises..." and "the franchisee shall ... refrain from competing with the franchisor or other franchisees of the franchisor...." La.R.S. 23:921(E).