Dear Rep. Donelon:
You requested an opinion of this office regarding the amount of any penalty to be imposed if the Saints football team were to terminate its lease prior to the expiration of the lease term. As you noted, Act 640 of the 1993 Regular Session (AAct 640") sets forth in Section 7(A) thereof, the following:
 Any person or entity who holds a National Football league franchise and leases the Louisiana Superdome and accepts any additional concessions pursuant to the provisions of this Act, and thereafter cancels his lease with the Louisiana Stadium and Exposition district prior to the expiration of such lease shall pay a penalty of fifty percent of the value of all benefits and concessions received during the term of such lease.
The Amended and Restated New Orleans Louisiana Saints/Louisiana Superdome Stadium Agreement dated September 30, 1994 (the "Lease") is between the State of Louisiana, the Louisiana Stadium and Exposition District (the "LSED"), Facility Management of Louisiana, Inc. (the "Manager") and the New Orleans Louisiana Saints Limited Partnership (the "Club"). The Lease provides in Section 16.2 as follows:
 Should the Club (1) violate its obligation to play its Home Games in the Superdome, (2) move its NFL franchise to any other city, (3) by its action or inaction allow the Club's NFL franchise to be moved to another city or (4) fail to pay rent due and such failure continues 120 days after notice thereof by the Manager, then, in such event, the Club shall be deemed in default and the Manager shall have the option to
 (1) immediately cancel this Agreement in which event the Club shall pay as liquidated damages in accordance with Section 7(A) of Act 640 of the 1993 Regular Session of the Louisiana Legislature (AAct 640"), it being specifically agreed that the additional concession pursuant to that Act is the professional football training facility and the value of that facility, SIX MILLION AND NO/100 ($6,000,000.00) shall be the value of all benefits and concessions received during the term of this Agreement as specified in the Act, plus the sum of NINETEEN MILLION AND NO/100 ($19,000,000.00) DOLLARS, which, because of the tremendous economic impact of the club on the economy of this state, this sum will be reduced ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS annually, beginning with the year 2006 and continuing thereafter, or
 (2) at any time before July 1, 2006, sue for specific performance of the covenants and obligations undertaken by the Club herein including, where appropriate, injunctive relief.
Contracts have the effect of law for the parties. C.C. art. 1983. If the terms are clear, the court will enforce the contract as written, provided the agreement is not contrary to good morals or public policy.First Nat. Bank of Commerce v. City of New Orleans, 555 So.2d 1345 (La. 1990). Parties are free to contract for any object that is lawful, possible, and determined or determinable. C.C. art. 1971. Parties are free to contract except for those instances where the government places restrictions for reasons of public policy. Louisiana Smoked Products,Inc. v. Savoie's Sausage Food Products, Inc., 96-1716, 96-1727 (La. 7/1/97), 696 So.2d 1373.
Because the language of Act 640 specifying the amount of the penalty is not clear and the terminology is not specifically defined, the Governor had the right to negotiate the amount of the penalty stated in the Lease in order to clarify the amount of the penalty. The Lease is more specific than Act 640. As stated in the Civil Code and case law, the Governor is authorized to negotiate any provision which is not against public policy. It is not against the mores, public policy or the law for the Governor to negotiate a liquidated damages provision in a contract.
Based upon the foregoing authority, it is the opinion of this office that the parties to the Lease did legally contract within the parameters set forth in Act 640 as to the penalty to be assessed should the Saints football team terminate the Lease prior to its expiration. The amount of the penalty negotiated is set forth in Section 16.2 of the Lease as $25,000,000 (the $6,000,000 value of the benefits and concessions plus $19,000,000).
Yours very truly,
 RICHARD P. IEYOUB Attorney General