United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 06-30332

_____

SECURITY ALARM FINANCING ENTERPRISES, INC.

Plaintiff - Appellant

VERSUS

JANE GREEN

Defendant - Appellee

_____

Appeal from the United States District Court
For the Western District of Louisiana, Monroe
3:05-CV-911

_____

Before DAVIS and STEWART, Circuit Judges, and GODBEY[*], District Judge.

PER CURIAM:[**]

The issue presented in this case is whether the district court erred in granting summary judgment and in refusing to enforce a non-compete agreement in a contract entered into between two

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

corporations based on Louisiana Revised Statute Annotated § 23:921. We agree with appellant that the district court erred in granting summary judgment and vacate that judgment and remand the case for further proceedings.

## I.

Security Alarm Financing Enterprises, Inc. ("SAFE") is a national corporation engaged in the business of selling, installing, and monitoring residential security systems. Central Cellular, Inc. ("CCI") is a local Louisiana corporation engaged in providing security services in several north Louisiana parishes. On October 29, 1999, SAFE and CCI entered into a contract in which CCI sold a number of customer alarm monitoring accounts (the "RMR Accounts") to SAFE, including the right to receive monthly payments for monitoring services under the RMR Accounts. The contract made it clear that "one of the fundamental expectations of SAFE . . . is that the RMR Accounts will be renewed by each Customer after expiration of their current terms and . . . that RMR Accounts customarily are so renewed."

## II.

To further these expectations that the RMR Accounts would be renewed, the following clause was included in the contract:

> ... [N]either Seller nor any of Seller's shareholders, directors, officers, partners, employees, or agents will in any manner, directly or indirectly, solicit, interfere or compete with SAFE or take any other action which is designed, intended, or might be reasonably anticipated to have the effect of (i) adversely affecting SAFE's

2

interest in any RMR Account, or the continued and repeated renewals of the RMR Accounts, or (ii) in discouraging any Customer from maintaining the same business relationships with SAFE after the Closing Date as were maintained with Seller prior to the Closing Date. This paragraph applies to the Customer, as well as to the monitored location; provided, however, that the covenant not to compete described above shall be limited to the city or cities, county or counties in which the monitored location and/or the places of business of the Customer are located and shall be effective so long as SAFE, or any person deriving title to any or all of the RMR Accounts, shall continue the business related to such RMR Accounts . . . .

Jane Green, the defendant-appellee, signed the contract on behalf of CCI, and a Vice President from SAFE also signed the contract.

In this suit, SAFE alleged that Green, as an officer and shareholder of CCI, violated the covenant not to solicit the accounts and compete with SAFE by contacting SAFE customers and either (1) "solicit[ing] those customers to cancel the contracts between the customers and SAFE;" or (2) "sign[ing] the name of the customers to a cancellation notice."  SAFE also alleged that Green's son started his own company, Central Security, following the purchase of some of CCI's contracts and that Central Security had in effect taken over CCI.  SAFE sought a preliminary and permanent injunction to prohibit Green from soliciting any type of business or service from any customer of SAFE whose RMR Account CCI had sold to SAFE.

Green then moved for summary judgment arguing that the non-competition clause was invalid and unenforceable under Louisiana Revised Statute Annotated § 23:921.  The district court granted the

motion for summary judgment and dismissed SAFE's suit for injunction.[1]

### III.

Louisiana Revised Statute Annotated § 23:921 provides in relevant part:

A(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void . . .

B.    Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

The district court concluded that subsection (B) governed the sale of the accounts from CCI to SAFE.  The court reasoned that the non-compete provision was void because the sale did not include a sufficient geographic limitation or any time limitation on the agreement not to compete.

Because this is a diversity action we sit as an *Erie* court and must apply Louisiana law as a Louisiana court would if presented with the same issues.  *Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561, 563 (5th Cir. 2000); *see Erie v. Tompkins*,

---

[1] We reject SAFE's argument that it asserted claims against Green for damages in addition to injunctive relief.

4

304 U.S. 64, 79-80 (1938).

We are persuaded that the legal analysis of the Louisiana Supreme Court in *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.* controls this appeal. *See The Meadowcrest Center v. Tenet Health System Hospitals, Inc.*, 902 So. 2d 512, 515 (La. Ct. App. 5th Cir. 2005) (stating that even if the servitude was in the nature of a non-competition clause, it would not come under the provisions of Louisiana Revised Statute Annotated § 23:921); *The Times-Picayune Publishing Corp. v. New Orleans Publishing Group, Inc.*, 814 So. 2d 34, 39-40 (La. Ct. App. 4th Cir. 2002) (feeling constrained by *Savioe's Sausage* from applying Louisiana Revised Statute Annotated § 23:921, but refusing to enforce the non-competition clause on public policy grounds).

In *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.*, 696 So. 2d 1373 (La. 1997), the court considered a non-compete clause in a contract between Savoie's Sausage and Food Products, Inc. ("Savoie") and Louisiana Smoked Products, Inc. ("LSP"). Savoie was a manufacturer and distributor of meat products. LSP contracted with Savoie to furnish Savoie with alligator and venison meat from which Savoie would process and package the sausage products, and, in turn, LSP agreed to purchase and process food products exclusively from or through Savoie. The contract included a non-competition clause which "prohibited the parties from engaging in any activity which directly competed with

5

the other party's business activity for a period of three years after the termination of the agreement." *Savoie's Sausage*, 859 So. 2d at 1375. The clause contained no geographic limitation.

After the 1991 contract terminated, Savoie continued to manufacture and sell the smoked alligator and venison sausage under its own label. LSP continued to market its own brand of those same products, now being manufactured for LSP by another corporation. After LSP became insolvent, it sued Savoie claiming it stole LSP's customers and undercut LSP's prices, and, in doing so, violated the non-compete provision in the contract.

The case was tried to a jury which rendered a verdict in favor of Savoie. The intermediate court of appeals reversed the judgment on the verdict and entered judgment for LSP.

On writ of certiorari, the Louisiana Supreme Court described the issue before it as "whether the legislature intended to prohibit non-competition clauses executed by two businesses with its enactment of the 1989 amendments to Louisiana Revised Statute Annotated § 23.921." *Id.* at 1378. More specifically, the court defined the question as "whether the prohibition of non-competition agreements applies to contracts executed by two corporations on equal footing." *Id.* at 1379.

Louisiana Revised Statute Annotated § 23.921 begins with a general prohibition against all non-compete agreements: "*Every contract or agreement, or provision thereof*, by which anyone is

6

restrained from exercising a lawful profession, trade, or business

of any kind, except as provided in this Section, shall be null and

void . . . ."  La. Rev. Stat. Ann. § 23:921(A)(1) (emphasis added).

This provision is then followed by exceptions to the above general

prohibition.[2]

---

[2]

> B. Any person, including a corporation and the individual
> shareholders of such corporation, who sells the goodwill
> of a business may agree with the buyer that the seller or
> other interested party in the transaction, will refrain
> from carrying on or engaging in a business similar to the
> business being sold or from soliciting customers of the
> business being sold within a specified parish or
> parishes, or municipality or municipalities, or parts
> thereof, so long as the buyer, or any person deriving
> title to the goodwill from him, carries on a like
> business therein, not to exceed a period of two years
> from the date of sale.
>
> C. Any person, including a corporation and the individual
> shareholders of such corporation, who is employed as an
> agent, servant, or employee may agree with his employer
> to refrain from carrying on or engaging in a business
> similar to that of the employer and/or from soliciting
> customers of the employer within a specified parish or
> parishes, municipality or municipalities, or parts
> thereof, so long as the employer carries on a like
> business therein, not to exceed a period of two years
> from termination of employment. An independent
> contractor, whose work is performed pursuant to a written
> contract, may enter into an agreement to refrain from
> carrying on or engaging in a business similar to the
> business of the person with whom the independent
> contractor has contracted, on the same basis as if the
> independent contractor were an employee, for a period not
> to exceed two years from the date of the last work
> performed under the written contract.
>
>                          . . . .
>
> E. Upon or in anticipation of a dissolution of the
> partnership, the partnership and the individual partners,
> including a corporation and the individual shareholders

The Louisiana Supreme Court concluded that "none of the exceptions in the statute apply to a business relationship between two corporations . . . ." *Savoie's Sausage*, 696 So. 2d at 1378. After considering the jurisprudential and statutory history of the enforceability of non-compete clauses in Louisiana, the court stated that "[i]n light of this consideration, we conclude that *Title 23* was not drafted to encompass non-competition agreements by two independent corporations on equal footing." *Id.* at 1380 (emphasis added).

---

if the corporation is a partner, may agree that none of the partners will carry on a similar business within the same parish or parishes, or municipality or municipalities, or within specified parts thereof, where the partnership business has been transacted, not to exceed a period of two years from the date of dissolution.

F. (1) Parties to a franchise may agree that:

(a) The franchisor shall refrain from selling, distributing, or granting additional franchises to sell or distribute, within defined geographic territory, those products or services which are the subject of the franchise.

(b) The franchisee shall:

(i) During the term of the franchise, refrain from competing with the franchisor or other franchisees of the franchisor or engaging in any other business similar to that which is the subject of the franchise.

(ii) For a period not to exceed two years following severance of the franchise relationship, refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of the franchisor or other franchisees of the franchisor.

. . . .

8

In seeking summary judgment, Green presented no summary judgment evidence from which a court could conclude that CCI was anything other than on a equal footing with SAFE.[3] Unless the district court concludes that the corporations were not on an equal footing, the district court should find that Louisiana Revised Statute Annotated § 23:921 has no application and the contract provision should be enforced.

The district court did not consider *Savoie's Sausage* and held that Louisiana Revised Statute Annotated § 23:921 applied to render the non-competition clause unenforceable. Because we conclude that the district court erred in granting summary judgment to Jane Green under the legal standard established by the Louisiana Supreme Court in *Savoie's Sausage*, we vacate that judgment and remand this case to the district court for further proceedings consistent with this opinion.

---

[3]The equal footing issue should be resolved based on the *Savoie's Sausage* court's discussion of the issue in this context. See *Savoie's Sausage,* 696 So. 2d at 1380 (relying on the factors in *Winston v. Bourgeois, Bennett, Thokey and Hickey*, 432 So. 2d 936, 940 (La. Ct. App. 4th Cir. 1983) to determine whether the corporations were on an equal footing).