PAUL A. BONIN, Judge.
| ,The Board of Ethics in its capacity as the Supervisory Committee on Campaign *341 Finance Disclosure authorized a confidential investigation into whether certain persons or entities were only nominal contributors to a political action committee that in turn had made substantial financial contributions to the campaign expenses of a particular candidate for public office. Based upon a signed, yet unsworn, complaint that referenced a specific campaign finance report of the PAC, and a brief reference to publicly available information from the Louisiana Secretary of State’s commercial database, the Board sought to depose, and secure documents via the issuance of subpoenas duces tecum, to certain persons in Orleans Parish. The Board suspected that these persons may have been the true source of the funds, which were reported by the PAC as the donations of the nominal contributors. The Orleans Parish residents filed motions for protective orders to quash each of the deposition notices and the accompanying subpoenas.[1]
The prospective deponents, John Doe and Jane Doe, successfully argued to the district court that the information sought by the Board was also the subject of |2an Order in a records-production matter that had been stayed by the First Circuit Court of Appeal.[2] The district court took no action pending a definitive resolution of the matter by the First Circuit and ultimately the Supreme Court of Louisiana. After the stay was lifted and the Order in the records-production matter became ex-ecutory, the proposed deponents in this matter argued that the district court should quash the deposition notices and subpoenas because the time period for the Board to institute legal proceedings in the matter had expired. The district court, subsequently, granted the protective orders. In its written reasons, the district court accepted the pertinent prescriptive dates suggested by the Board’s counsel and concluded that any action by the Board to penalize the violation it was investigating had prescribed.
We have reviewed the ruling granting the protective orders under an abuse-of-discretion standard. See, e.g., Whitt v. McBride, 94-896, p. 6 (La.App. 3 Cir. 3/1/95), 651 So.2d 427, 430 (review of the quashal of subpoena duces tecum under La. C.C.P. art. 1354 A is made pursuant to an abuse-of-discretion standard); cf. Mary Moe v. L.L.C. v. Louisiana Bd. of Ethics, 03-2220, pp. 9-10 (La.4/14/04), 875 So.2d 22, 29 (review of the issuance of a permanent injunction, granted under a prima facie showing for preliminary injunction, is made pursuant to the de novo standard). The abuserof-diseretion standard is highly deferential, but a district court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); see also United States v. Taylor, 487 U.S. 326, 336, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988) (noting that discretionary choices are not left to a court’s inclination, but to its judgment, which is guided by sound legal principles.)
The Board argues that the district court’s granting of the protective order was based upon an erroneous interpretation of the prescriptive period applicable to the institution of enforcement actions arising from its investigations. The Board *342 also argues that the correct prescriptive period is three years and not the one-year period identified by the trial judge in its reasons for judgment.[3] As we explain in greater detail below, we find that the district court’s ruling was not based on an erroneous view of the law and we ultimately find that it did not abuse its discretion when it granted the protective order set this time. Our conclusion in this matter is premised on the observation that the statute containing the applicable prescriptive period is ambiguous, which constrains us to strictly construe the statutory provisions relied upon by the Board because any enforcement actions by the Board against the Does would be penal in nature.
I
The Board functions as the Supervisory Committee on Campaign Finance Disclosure and its members constitute the Supervisory Committee.[4] See La. R.S. 18:1511.1 A. As such, it shall “function as the supervisory committee to Radminister and enforce the provisions of this Chapter [La. R.S. 18:1481 — La. R.S. 18:1555, i.e., the Campaign Finance Disclosure Act] and the rules, regulations, and orders issued hereunder.” [5] La. R.S. 18:1511.1 A. The Board “may adopt and promulgate rules and regulations in accordance with the Administrative Procedure Act necessary to effectuate the provisions and purposes of this Chapter.” La. R.S. 18:1511.2 A. The Board is granted explicit authority to provide by rule for “investigations and proceedings pursuant to this Chapter. La. R.S. 18:1511.2 A(1). Importantly, the Legislature has explicitly granted the Board rule-making authority to both “[c]larify a provision of this Chapter,” and to “[djefine a term used in this Chapter.” La. R.S. 18:1511.2 A(2) and (3).
The Board may investigate any apparent or alleged violation of the Campaign Finance Disclosure Act. See La. R.S. 18:1511.4 A. When, as here, the complaint to the Board is unsworn, an investigation may only be initiated by the Board “when, as a result of its review of reports, other documents or information, filed under the provisions of [the Act], it determines that there is reason to believe a violation of [the Act] has occurred,” and then only by a two-thirds vote of the Board. Id. The Board’s authority to investigate a violation extends to the examination and auditing of records and reports which are required to be maintained or filed under the Act’s provisions. See La. R.S. 18:1511.4 B. The Board’s investigative authority also affords it the power “to hold hearings, to subpoena witnesses, administer oaths, compel the production of books, records, | sand papers, public and private, require the submission under oath of written reports or answers to questions” as well as to “do all that is necessary to effect the provisions” of the Act. La. R.S. 18:1511.4 C. The Board may petition a district court to compel compliance with its subpoena or order in the event of a refusal, *343 and the resulting court order may be punished as a contempt of court. See La. R.S. 18:1511.4 D. Nevertheless, an affected party, which is defined broadly to include “any person whose books, records, papers, or other documents are the subject of any subpoena,” may, upon a showing of good cause, move the district court within the jurisdiction of which any inquiry is being conducted to make “any order which justice requires to protect such person from annoyance, embarrassment, oppression, or undue burden or expense.” La. R.S. 18:1511.4 C(2). The district court is empowered to remedy an improper subpoena by ordering one, or more, of the following:
1) that the inquiry not be had;
2) that the inquiry may be had only upon specified terms and conditions including a designation of the time and place;
3) that the inquiry shall be conducted by a method other than selected by the supervisory committee;
4) that certain matters not be inquired into or that the scope of the inquiry be limited to certain matters;
5) that the inquiry be conducted with no one present except persons designated by the court.

Id.

Complaints, reviews, and all investigations and proceedings of the Board “shall be kept strictly confidential until such time that action with which [the [r,Board] or the district attorney has proceeded, ... the prescriptive period has elapsed, or the matter is otherwise finally disposed of.” See La. R.S. 18:1511.8 A. But, the Board may divulge that a review or investigation was made or a complaint received with regard to a person or committee, and, after investigation, no substantial reason was found to believe that the Act was violated. Id.
“When the results of the investigation by [the Board] indicate that a violation of [the Act] has occurred which is subject to civil penalties, [the Board] is authorized to file civil proceedings to collect the civil penalties provided in R.S. 18:1505.5.” See La. R.S. 18:1511.5 A(l) (emphasis added).[6] The civil enforcement action or proceeding “shall be by rule to show cause and shall be conducted pursuant to the relevant provisions of the Louisiana Code of Civil Procedure.” See La. R.S. 18:1511.5 A(3). An enforcement action brought by the Board is, therefore, a summary proceeding. See La. C.C.P. arts. 2592(12) and 2593. Summary proceedings are to be “conducted with rapidity, within the delays allowed by the court, and without citation and observance of all the formalities required by an ordinary proceeding.” La. C.C.P. art. 2591. A copy of the rule to show cause and of the order assigning the date and hour of the trial of the rule shall be served on the defendant. See La. C.C.P. art. 2594. The trial of a summary matter is by preference over ordinary proceedings and is without a jury. See La. C.C.P. art. 2595 and La. R.S. 18:1511.11 A. Nevertheless, prior to using the |7accounts or records gathered during the confidential investigation at the trial, the district court shall make an in camera determination of whether the accounts or records are relevant and material before they may be introduced into evidence without further restriction. See La. R.S. 18:1511.8 C. The district court determines the appropriate penalty for the vio *344 lation in the event it concludes that the Board has met its burden of proof. See La. R.S. 18:1511.5 B. An appeal lies from the assessment of civil penalties. See La. R.S. 18:1511.5 C. After becoming final, the judgment is executory and it may be collected in the same manner as any other money judgment. See La. R.S. 18:1511.5 D. The proceeds of the penalty are paid directly to the state treasurer. Id.
II
An action for the violation of the Campaign Finance Disclosure Act-the rule to show cause brought pursuant to La. R.S. 18:1511.5 A(3) — “must be commenced before three years have elapsed from the date of the violation or, if the violation is contained in a report, before one year has elapsed from filing of the relevant report.” See La. R.S. 18:1511.11 B (emphasis added). The Board argues that because the violation under investigation was not “contained in a report” the three-year prescriptive period controls. The prospective deponents argue that the initiating complaint referenced a specific campaign finance disclosure report by the PAC, which disclosed four specified contributors, as well as a specified candidate report as the basis for the complaint. The prospective deponents further correctly note that no rule to show cause was filed, i.e. no enforcement action was | ^commenced, within one year of the filing of the underlying PAC report and, thus, the prescriptive period of one year controls because the violation was “contained in a report.”
The Board contends that it is investigating the prospective deponents, John Doe and Jane Doe, for suspicion that they violated the provisions of La. R.S. 18:1505.2 A(l), which provides that “[n]o person shall give, furnish, or contribute monies to or in support of a candidate or to any political committee, through or in the name of another, directly or indirectly.” The individual subpoenas that were directed to John Doe and Jane Doe, who are related by consanguinity, seek the records of their financial transactions with twenty named or identifiable persons or entities in addition to each other. The subpoenas classify these persons and entities as the “Doe-Entities.” Four of the Doe Entities were identified in the initial complaint as suspicious contributors, and their contributions nearly correlate in the aggregate amount to a specific, identified expenditure on the same candidate’s report as the one specified in the initial complaint.[7] Notably, both subpoenas sought materials from the prospective deponents concerning that single expenditure showing on the candidate’s financial disclosure report. The Board concedes that its suspicion is aroused as to the source of the funds for the four entities whose aggregate contributions are reported in the PAC’s financial disclosure report of contributors, which, when aggregated, correlate to the specific expenditure reported in the candidate’s financial disclosure report.
|aIf John Doe or Jane Doe did give, furnish, or contribute monies, whether directly or indirectly, to the PAC “in the name of another,” then they “shall be assessed a penalty.” La. R.S. 18:1505.2 A(2). If the violation was “unknowing,” then the penalty shall be an amount equal to the contribution plus ten percent. See La. R.S. 18:1505.2 A(2)(a). If the violation “could have been avoided through the exercise of due diligence,” then the penalty shall be an amount equal to twice the amount of the contribution. See La. R.S. 18:1505.2 A(2)(b). Here, we consider it *345 sufficient to note that either penalty would be considerable.
But, more importantly and to the point for our purposes, viewing the provisions of the Campaign Finance Disclosure Act related to the institution of actions seeking monetary penalties, we must conclude that such provisions when ambiguous or susceptible to more than one reasonable meaning must be construed to the benefit of the putative violator. Given this conclusion, we find, for the reasons discussed below, that the district court did not abuse its discretion when it quashed the subpoenas pursuant to La. R.S. 18:1511.4 C(2) because their enforcement under the present circumstances would have been oppressive and unduly burdensome.
Ill
The Does argued successfully to the district court that the Board’s subpoenas should be quashed because any potential enforcement action for civil penalties that might flow from the Board’s investigation into the Does actions has prescribed. Thus, the Board contends that the district court’s ruling quashing its subpoenas is Imlegally erroneous because it was based on a misreading of La. R.S. 18:1511.11 B, which, as noted, provides that an action for a violation of the Campaign Finance Disclosure Act “must be commenced before three years have elapsed from the date of the violation or, if the violation is contained in a report, before one year has elapsed from filing of the relevant report.” Having reviewed the matter thoroughly we cannot say that the district court’s interpretation is legally erroneous or its subsequent ruling an abuse of discretion.
We note at the outset of our discussion that there has been no suggestion that the Board is suspicious of, or seeking to. investigate, any direct or indirect giving, furnishing, or contribution of monies through, or in the name of, another person in support of a candidate or PAC which has not already been reported. In other words, the Board in this case was investigating whether certain contributions that were named in the PAC’s disclosure report and ascribed to named contributors were actually furnished by someone other than the named contributors. Neither the initial complaint nor the Board’s authorization for the investigation was directed at unreported contributions; the contributions under investigation were reported but they were allegedly reported by nomirial contributors only.
The Board argues, however, that it is the violation itself which must be self-evident on the face of the report in order to apply the “contained in the report” one-year prescriptive period. By way of illustration, the Board points to the circumstances set out in State Bd. of Ethics v. Ourso, 02-1978 (La.4/9/03), 842 So.2d 346. There, a candidate disclosed loans on his campaign finance report in | n excess of the contribution limits established in La. R.S. 18:1505.2 H. Ourso, 92-1978, p. 1, 842 So.2d at 347. The Supreme Court noted, in dicta, that the one-year prescriptive period applied “because the alleged violations, the receipt of loans in excess of the contribution limits, were disclosed in the reports filed with the Board.” Ourso, 02-1978, p. 4, 842 So.2d at 348. It is clear, however, from the Supreme Court’s opinion that the issue in Ourso was not the construal of the phrase “contained in the report,” but whether the one-year period contained within the statute was prescriptive or peremptive, and thus subject to waiver by the candidate under investigation.[8] Ourso, 02-1978, pp. 9-10, 842 So.2d *346 at 352. Ourso, therefore, affords but slight insight into the issue currently set before this Court.
Nevertheless, we acknowledge that the Board’s interpretation of the phrase “contained in the report” is a reasonable reading of the term. We must also acknowledge, however, that the Board’s reading of the term is not the only reasonable meaning attributable to La. R.S. 18:1511.11 B. Indeed, it is equally reasonable to read the statute as did the district court below because the suspected violations that the Board seeks to investigate via the issuance of subpoenas are clearly contained in the PAC’s report. We also recognize that the Board is empowered, by virtue of La. R.S. 18:1511.2 A(2) and (3), to both clarify and define the various provisions found in the Campaign Finance Disclosure Act, but that it has not done so with respect to any phrase contained in La.' R.S. 18:1511.11 hi>B. Our review of the statute, therefore, convinces us that it is ambiguous, and that we must construe this ambiguity in favor of the Does.
It is axiomatic that the starting point for the interpretation of any statute is the language of the statute itself. See Dejoie v. Medley, 08-2223 (La.5/5/09), 9 So.3d 826. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. See La. Civil Code. art. 9; La. R.S. 1:4; Dejoie, supra. Where a statute is ambiguous and susceptible of two constructions, however, the courts will give that construction to the statute which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. See Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980). Further, when the language of a law is susceptible of different meanings it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examination of the context in which they occur and the text of the law as a whole. See Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373.
Thus, in construing the phrase “contained in a report” so as to determine which prescriptive period is controlling, we observe that the statute is penal in nature. Specifically, La. R.S. 18:1511.11 B is situated in Part VI, of Chapter 11 concerning election campaign finance, of Title 18, which contains Louisiana’s | ^election code. Part VI is subtitled “Enforcement,” and, as previously discussed, sets out the enforcement mechanisms whereby the Board is empowered to investigate campaign finance violations, institute collection proceedings, and secure the imposition of penalties for violations of Louisiana’s campaign finance laws. Therefore, La. R.S. 18:1511.11 B is penal as applied here because it is situated within that Part of Louisiana’s election finance law that is dedicated to the enforcement of civil prohibitions and the collection of civil penalties.
Because of its penal nature, La. R.S. 18:1511.11 B must be construed in favor of the Does. Louisiana jurisprudence has long held that penal laws are strictly construed, and that any ambiguity in the language found within such statutes must be resolved with lenity and in favor of the individual subject to the penalty. State v. *347 Anders, 01-0556, p. 5 (La.6/21/02), 820 So.2d 513, 516. The rule of lenity posits that “courts should not construe penal statutes as extending powers not authorized by the letter of the law even if such powers would be arguably within its spirit.” Sales 360, L.L.C. v. Louisiana Motor Vehicle Com’n, 07-432, p. 10 (La.App. 5 Cir. 12/11/07), 976 So.2d 188, 194. The rule of lenity, moreover, applies not only to the substantive ambit of criminal laws and civil penal statutes, but also to the penalties imposed by those laws. State v. Piazza, 596 So.2d 817, 820 (La.1992). Additionally, the rule of lenity requires that “where there is any doubt as to the interpretation of a statute upon which a prosecution is based, doubt must be resolved in favor of the accused.” State v. Small, 11-2796, p. 19 (La.10/16/12), 100 So.3d 797, 811. This principal applies to both criminal 114laws and civil statutes of a penal nature. See, for example, Guillory v. Lee, 09-0075, p. 37 (La.6/26/09), 16 So.3d 1104, 1130, which discussed the principle in the context of civil penalties imposed on insurers which were found to have engaged in bad faith settlement practices. Additionally, the rule of lenity has been applied in the area of administrative law. See, Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13 (La.1981).
Because La. R.S. 18:1511.11 B is both penal in nature and ambiguous, we conclude that the district court correctly interpreted it to mean that its one-year period applies to the facts of this case because the suspected violations that the Board seeks to investigate are contained in the PAC’s report. The subpoenas, therefore, are oppressive and unduly burdensome on the Does because any potential civil enforcement action that might arise out of the information secured via the Does’ response to the subpoenas has prescribed.[9] The district court, therefore, did not abuse its discretion afforded it by La. R.S. 18:1511.4 C(2) in quashing the Board’s subpoenas as moot. Lastly, we note that our decision with respect to the matter before us does not prevent the Board from initiating further investigations, or attempting further discovery, into the Does’ actions provided such investigations are timely and based on evidence not contained within the specific reports that formed the basis for the investigation at issue.
11fiDECREE
Accordingly, we affirm the district court’s granting of the motions to quash that were filed by John Doe and Jane Doe.
AFFIRMED
LANDRIEU, J., concurs in the result.

. The respective quashal actions were subsequently consolidated.

. Because of the secrecy and confidentiality required until the finality of this judgment, we use the pseudonyms employed by the parties. Likewise, we also decline to identify the specific PAC or specify filing dates so as to not inadvertently reveal or suggest confidential information. See La. R.S. 18:1511.8 A.

.Although a district court's written reasons are nearly always helpful to an intermediate appellate court, we review judgments and not reasons. See Wooley v. Lucksinger, 09-0571, p. 77 (La.4/1/11), 61 So.3d 507, 572. We note in passing that the Board makes much over the district court’s identification of a specific date, which date was suggested to it by the Board's counsel, but which does not correspond with the one-year anniversary date that had already occurred.

. Like the parties in their respective memo-randa, our references to the "Board” are short-hand for the Supervisory Committee.

. Chapter 11 may be cited as the Campaign Finance Disclosure Act. See La. R.S. 18:1481.

. There is a separate provision for criminal enforcement where the Board’s investigation indicates that the violation was "knowing, willful, and fraudulent” or "an intentional criminal violation” of the Act has occurred. See La. R.S. 18:1511.6. We are not concerned with this provision, which requires enforcement by a district attorney or the attorney general. Id.

. The names of some of the other persons and entities included on the Doe-Entities list are also contained in the PAC’s report and the candidate's report.

. The Supreme Court in Ourso concluded that the one-year period • set out in La. R.S. *346 18:1511.5 A(3) was prescriptive, and thus subject to waiver.

. The Board also argues that prescription on any potential civil enforcement action brought in Orleans Parish was suspended by the doctrine of contra non valentem pending resolution of the matter which was subject to stay orders issued by the First Circuit and the Supreme Court. We do not find this argument persuasive. First, the stays issued by the First Circuit and the Supreme Court applied to subpoenas issued in another jurisdiction. The stays did not prevent the Board from further investigating this matter or filing a civil enforcement action. Second, it has been held that court issued stays do not suspend prescription, prevent the filing of a lawsuit, or implicate the doctrine of contra non valentem. See White v. Haydel, 593 So.2d 421 (La.App. 1 Cir.1991), and Castaneda v. La. Ins. Guaranty Assoc., 95-29 (La.App. 5 Cir. 5/30/95), 657 So.2d 338.